FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

00 JUL 13 PM 2 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| GREGORY H. HARDIN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CV98-H-0093-W |
| | ) | |
| MERCEDES-BENZ U.S. | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| DEFENDANT. | ) | |

ENTERED

JUL 1 3 2000

## MEMORANDUM OF DECISION

The Court has before it the March 31, 2000 motion of

plaintiff Gregory H. Hardin ("Hardin") for summary judgment and

the May 5, 2000 cross-motion of defendant Mercedes-Benz U.S.

International, Inc. ("MBUSI") for summary judgment.[1]  Pursuant to

the Court's April 12, 2000 order, the plaintiff's motion was

deemed submitted, without oral argument, on June 7, 2000, and

---

[1] Also pending before this court is the June 7, 2000 motion
of plaintiff to strike or in the alternative extend time to file
responsive pleading and to conduct discovery.  In his motion,
plaintiff seeks to strike the affidavits of Lee Hammett, Greg
Kimble, and Tara Beams Baxter, offered by defendant in support of
its motion for summary judgment on the grounds that the
affidavits contain information earlier sought by plaintiff in
discovery but not supplied by the defendant.  The Court need not
resolve this motion.  Although the motion appears unwarranted, as
the information supposedly not produced was included (albeit in
narrative form) in the defendant's April 28, 2000 response to the
Court's April 12, 2000 order compelling discovery, striking the
challenged material would not alter the ultimate outcome in this
case.  Nor would granting plaintiff's alternate motion to extend.



pursuant to the Court's May 23, 2000 order, the defendant's motion for summary judgment was deemed submitted, without oral argument, on June 20, 2000.

## I. Procedural History

Plaintiff Hardin commenced this action on January 15, 1998, by filing a complaint alleging violations of the Americans With Disabilities Act ("ADA"). The plaintiff contended in his pleadings that defendant had violated the ADA in two respects. Allegedly, defendant had discriminated against plaintiff by not offering the plaintiff employment and had made an impermissible, pre-offer medical inquiry during the applicant screening process. (See Compl. ¶¶ 5-6.) Following the purported discrimination and prior to bringing suit, plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter (See EEOC Charge No. 130971394; Oct. 31, 1997 Notice of Right to Sue.); because plaintiff filed suit within ninety days of receipt of the right to sue letter, his claims are properly before this Court. See 42 U.S.C. § 12117 (1994); 42 C.F.R. §§ 1601.7, 1601.28 (1999). The plaintiff's pending motion for summary judgment asserts that no material issues of fact remain and that the plaintiff is entitled to judgment as a matter of law as to defendant MBUSI's liability

2

under the ADA.  (<u>See</u> Pl.'s Mot. Summ. J.)

Defendant's May 5, 2000 motion for summary judgment asserts that plaintiff has failed to establish a prima face case for any of plaintiff's claims.  (<u>See</u> Def.'s Mot. Summ. J. 2.)  More specifically, defendant argues that plaintiff cannot show that he has a disability, that MBUSI knew of any alleged disability, that plaintiff was qualified, or that plaintiff was subject to unlawful discrimination because of a disability.  (<u>See</u> Def.'s Mot. Sum. J. 2.)  The defendant also asserts in its motion for summary judgment that it has articulated legitimate, non-discriminatory reasons for its conduct and that the plaintiff has failed to show that those purportedly legitimate reasons were pretexts for illegal discrimination.  (<u>See</u> Def.'s Mot. Summ. J. 2.)

Both parties have filed briefs and submitted evidence is support of their respective positions.  On March 31, 2000, plaintiff filed evidence[2] in support of his motion.  Then on May 24, 2000, plaintiff filed a supporting brief.  Defendant

---

[2] The plaintiff submitted the March 29, 2000 affidavit of Greg Hardin, an October 31, 1997 Notice of Right to Sue, EEOC Charge of Discrimination No. 130971394, an August 7, 1996 letter from Lee Hammett, and an undated invitation for applications for employment with defendant MBUSI.

submitted evidence[3] in support of its own motion for summary

judgment and in opposition to the plaintiff's motion on May 30,

2000, and filed its brief on June 6, 2000.  Finally, on June 20,

2000, the plaintiff responded with a reply brief in opposition to

the defendant's motion and in support of its own summary judgment

motion.  The issues and the parties' arguments having been fully

briefed, the cross-motions for summary judgment are now ripe for

decision.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary

judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  The party asking for summary judgment always bears the

initial responsibility of informing the court of the basis for

_____

[3] The defendant submitted the May 23, 2000 affidavit of Lee
Hammett with six attachments, the May 30, 2000 affidavit of Tara
Beams Baxter with one attachment, the May 26, 2000 affidavit of
Greg Kimble, the February 23, 2000 deposition of Gregory Hardin,
the MBUSI equal employment opportunity policy, an August 7, 1996
letter from Lee Hammett, the handwritten notes of Gregory Hardin
(Docs. PLTF 4, PLTF 331), and EEOC Charge of Discrimination No.
130960769.

its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real

5

<u>Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a

6

simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff was one of the thousands of persons who applied for production and maintenance positions when defendant announced its new automotive plant in Vance, Alabama in the mid-1990s. The initial hiring process consisted of six distinct, sequential phases, with the preliminary screening and testing (the first four phases) administered by the Alabama State Employment Service

7

("ASES") and by Alabama Industrial Development Training ("AIDT").
During the first phase, applications were sought.  In the next
phase, the applications were screened by the ASES and qualified
applicants were scheduled for the General Aptitude Battery.
Then, during the third phase, based upon General Aptitude Battery
scores, some applicants were scheduled for additional testing by
AIDT.  In the fourth phase, applicants who successfully completed
the prior phase were contacted by AIDT for telephone interviews
and yet more testing.  At the fifth phase, successful applicants
were interviewed for the first time by MBUSI.  During the sixth
and final phase, candidates who passed the MBUSI interview
received pre-employment training.  Although an applicant might
successfully complete all six phases of the process, an offer of
employment was not guaranteed.

        The plaintiff progressed to the fourth phase and was
contacted for a brief telephone interview.  During the interview,
plaintiff was asked to explain a one-year gap in his employment.
He replied that he had had back surgery.  The interviewer then
inquired whether the entire one-year gap was related to the
surgery, to which plaintiff replied in the affirmative.
Following questioning about the gap in employment, the interview
continued.  However, after the interview, plaintiff was not

                                8

scheduled for any additional testing and never progressed to the next stage of the hiring process.  Plaintiff believes that the inquiry about his one-year gap in employment was impermissible under the ADA and that his failure to advance further in the hiring process was the result of illegal discrimination based on disability.

### IV. Applicable Substantive Law and Analysis

Plaintiff has attempted to state two claims under the ADA. His first claim is for discrimination because of disability premised upon MBUSI's failure to hire plaintiff.  His second claim is for a violation of the ADA's ban on pre-offer medical inquiries premised upon the questioning during plaintiff's telephone interview concerning his one-year gap in employment. The Court will address plaintiff's claims in turn.

### 1. Failure to Hire

Plaintiff's first claim is for disability discrimination in hiring under the ADA.  The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a)

9

(1994).  The same framework long used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under the ADA.  See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999); Barnes v. Cochran, 944 F. Supp. 897, 901 (S.D. Fla. 1996).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a case of employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989) (ADEA case).  See also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th

10

Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).  However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989).  See also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

Here, plaintiff has presented only circumstantial evidence of discrimination.  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas

11

<u>Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.
Ct. 1089, 67 L. Ed. 2d 207 (1981)." <u>Combs</u>, 106 F.3d at 1527.
Under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, the plaintiff
first has the burden of establishing a prima facie case of
discrimination, which creates a rebuttable presumption that the
employer acted illegally. <u>See</u> <u>id.</u> at 1527-28.  The methods of
presenting a prima facie case, as well as the exact elements of
the case, are not fixed; rather they are flexible and depend to a
large degree upon the facts of the particular situation. <u>See</u>,
<u>e.g.</u>, <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181,
1185 (11th Cir. 1984); <u>Lincoln v. Board of Regents of Univ. Sys.</u>,
697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff
establishes a prima facie case of employment discrimination by
showing that he or she was a qualified member of a protected
class and was subjected to an adverse employment action but that
otherwise similarly situated employees outside the plaintiff's
class were treated dissimilarly.  <u>See McDonnell Douglas</u>, 411 U.S.
at 802.

Once the plaintiff has shown a prima facie case and,
thereby, has raised the presumption of discrimination, the burden
of production shifts to the employer to proffer a legitimate and
nondiscriminatory reason for its actions. <u>See Combs</u>, 106 F.3d at

12

1528.  The employer's burden is so light as to be virtually

weightless, meaning that the employer need merely put forth a

legitimate reason for its actions and need not convince the court

that the reason offered was the true, motivating force.  See

Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1485

(11th Cir. 1989).  If the employer satisfies that burden by

articulating a nondiscriminatory reason, then the presumption of

discrimination falls and the burden of production again shifts to

the defendant to offer evidence sufficient for a reasonable jury

to conclude that the employer's supposedly legitimate reason is

merely a pretext for illegal discrimination.  Although the prima

facie case is irrelevant once the employer has offered a

legitimate reason for its actions, the evidence of pretext may

include the same evidence offered to establish the prima facie

case.  See Combs, 106 F.3d at 1528.  Despite this shifting of the

burden of production between the plaintiff and the defendant

under the McDonnell Douglas and Burdine framework, "[t]he

ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff."  Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248. 253 (1981).  Given

that the ultimate burden of persuasion always lies with the

employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must produce evidence tending to show (1) that he is disabled, (2) that he is a qualified individual within the meaning of the ADA, and (3) that he was subjected to illegal discrimination because of his disability. See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000); Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996). Although not a separately enumerated element, implicit in the requirements of

14

the prima facie case is a knowledge requirement on the part of the employer.  Not only must a plaintiff demonstrate that he is disabled, but he must also show that the employer had either actual or constructive knowledge of the disability.  <u>See</u> <u>Hilburn</u> <u>v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1226 (11th Cir. 1999); <u>Morisky</u>, 80 F.3d at 447-49.  Otherwise, the causation element will not be satisfied.  <u>See Morisky</u>, 80 F.3d at 447-49.  As discussed below, plaintiff Hardin has failed to met his prima facie case because he has not produced sufficient evidence that he was disabled at the time relevant to his claim or that defendant MBUSI knew of any such disability.

A plaintiff will be regarded as having a disability for purposes of the ADA if he can satisfy any of three definitions. The ADA first defines the term "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities . . . ."  42 U.S.C. § 12102(2)(A) (1994). Alternatively, an individual has a disability if he "has a record of such impairment . . . ."  42 U.S.C. §12102(2)(B) (1994). Finally, an individual will be deemed to have a disability under the ADA if he is "regarded as having such an impairment."  42 U.S.C. § 2102(2)(C) (1994).  Because the plaintiff does not specify which definition supposedly applies to him, the Court

15

will consider all three.

Clearly, plaintiff has failed to satisfy the definition of
disability contained in section 12102(2)(A), which requires a
substantially limiting physical or mental impairment. As the
definition makes clear, a physical or mental impairment alone is
insufficient to find disability under the ADA. See Hilburn, 181
F.3d at 1226 (citing Pritchard v. Southern Co. Servs., 92 F.3d
1130, 1132 (11th Cir. 1996)). Rather, the impairment must result
in substantial limitations in performing a major life activity.
See id. at 1226-27. See also 42 U.S.C. § 12102(2)(A). In
deciding whether an impairment is substantially limiting, a court
is to consider the quality and seriousness of the impairment, the
duration of the impairment, and the long-term effects of the
impairment. See 29 C.F.R. § 1630.2(j)(2) (1999).

In the present case, although the plaintiff complains of a
few, mostly minor, physical and emotional problems in his
affidavit and in his deposition, he has offered nothing beyond
his own conclusory statements to support his contentions that he
has  significantly limiting impairments. Much more substantial
evidence than the meager nuggets proffered by the plaintiff have
been rejected as insufficient to establish the disability element
of a prima facie case. See Hilburn, 181 F.3d at 1227-28. Even

16

if plaintiff's evidence of disability were sufficient, he has not shown that MBUSI knew of any disabling mental or physical impairment.  In fact, MBUSI could not have known of plaintiff's psychological problems because they did not exist at the time he was interviewed by AIDT.  (See Hardin Dep. 82-83, 95-99, 134.) As for any physical impairment, the only information that the plaintiff provided during his telephone interview was that the one-year gap in his work history was the result of back surgery. (See Hardin Dep. 62-64.)  Therefore, the only knowledge MBUSI possessed was that plaintiff had previously undergone surgery, recuperated for one year, and then returned to gainful activity. However, surgery and a subsequent period of recuperation are not the type of "permament or long-term impairment" contemplated by the ADA and are not evidence of such an impairment.  See Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999); Hilburn, 181 F.3d at 1229-30.  In short, defendant had no actual or constructive knowledge of disability; therefore any failure to hire plaintiff could not be because of disability.  See Morisky v. Broward County, 80 F.3d 445, 447-49 (11th Cir. 1996).

Plaintiff may also demonstrate that he is disabled by showing a record of substantially limiting impairment.  See 42 U.S.C. § 12102(2)(B) (1994).  This definition of disability is

17

satisfied if the plaintiff "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1999). The regulations seem to contemplate some exchange or submission of documentary evidence, such as medical or employment records, giving rise to the employer's knowledge of the plaintiff's record of impairment. Whether the plaintiff's oral statement, even if recorded by the employer's agent, is sufficient is unclear. See 29 C.F.R. pt. 1630 app. § 1630.2(k) (1999). However, even assuming that the plaintiff's oral explanation of back surgery for his one-year gap in employment, which was noted by the AIDT interviewer, constitutes a record of impairment, plaintiff's situation does not meet the definition of disability in section 12102(2)(B). The record itself must indicate the existence of some impairment that would substantially limit at least one major life activity. See id. See also Hilburn, 181 F.3d at 1229. All that the plaintiff communicated was the bare fact that he had had back surgery resulting in one-year of unemployment. As previously discussed, however, surgery followed by a period of recuperation is not a substantially limiting impairment under the ADA, nor does it give rise to an inference of such an underlying impairment. See

18

Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999).  Contrary
to what plaintiff apparently argues, the mere fact that someone
is hospitalized or has surgery or has a lengthy recuperation does
not mean that the person suffers from a disability; instead, one
must show that the underlying impairment prompting the treatment
was substantially limiting under the ADA.  See Colwell v. Suffolk
County Police Dep't, 158 F.3d 635, 645-46 (2d Cir. 1998).  As the
Fifth Circuit has written in an analogous case, "The ADA requires
an individualized inquiry beyond the mere existence of a hospital
stay. . . . To accept [the plaintiff's] reading would work a
presumption that any condition requiring temporary
hospitalization is disabling--a presumption that runs counter to
the very goal of the ADA."  Burch v. Coca-Cola Co., 119 F.3d 305,
317 (5th Cir. 1997).  Stated slightly differently, "[a] temporary
inability to work while recuperating from surgery . . . does not
constitute evidence of a disability covered by the A[DA]."
Sutton, 185 F.3d at 1209.

     Finally, a plaintiff may satisfy the disability element of a
prima facie case by demonstrating that the defendant employer
regarded him as having a disability.  See 42 U.S.C. § 12102(2)(C)
(1994).  See also Hilburn, 181 F.3d at 1226, 1230.  This standard
is met if a person (1) has a physical or mental impairment that

does not substantially limit a major life activity but which is treated as having a substantially limiting effect; (2) has an impairment that substantially limits a major life activity only as the result of the attitudes of other persons; or (3) has no defined physical or mental impairment but is nevertheless treated as having a substantially limiting impairment. See 29 C.F.R. § 1630.2(l) (1999). "As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant." Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 913 (11th Cir. 1996). Plaintiff Hardin has introduced no evidence suggesting that defendant MBUSI considered him to be disabled. At most, plaintiff has shown that defendant's agent had knowledge that plaintiff previously underwent back surgery and a one-year recuperation before returning to work. But simple knowledge of a temporary inability to work while recuperating from surgery is not equivalent to regarding an individual as disabled because such knowledge does not alone show that the defendant regarded the plaintiff as suffering from the requisite significant or substantially limiting impairment. See Sutton, 185 F.3d at 109. To summarize, plaintiff has failed to establish a prima facie case of disability discrimination because he has failed to put forth sufficient evidence that he was disabled at

the relevant time and that defendant MBUSI had knowledge of any such disability.

Furthermore, even if plaintiff had satisfied the elements of a prima facie case of disability discrimination, he still would not prevail as the defendant has articulated legitimate and non-discriminatory reasons for its failure to hire the plaintiff, which reasons the plaintiff has failed to rebut. See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) ("The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims."); Combs v. Plantation Patterns, 106 F.3d 1519, 1527-29 (11th Cir. 1997) (explaining that once an employment discrimination plaintiff establishes a prima facie case, the burden of production then shift to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shift back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination). Defendant MBUSI has offered a legitimate and non-discriminatory explanation for the defendant's failure to progress in the application process and be hired. Although the plaintiff's score on the part of the interview in which an allegedly improper medical inquiry was made was actually in the acceptable range,

21

his scores on two other, unrelated parts of the interview were unacceptable.  The two unacceptable scores caused the plaintiff to be placed in the lowest ranking band of applicants following the interview.  Because applicants were taken from the highest band first and only when higher bands were exhausted would applicants be drawn from lower ranking bands, the plaintiff was never reached for progression in the hiring process.  As rebuttal evidence, the plaintiff has offered nothing other than his own subjective beliefs and accusations that his history of back surgery was the real reason that he did not advance in the screening process.  See Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988).  In a case such as this, "[w]here the defendant's justification evidence completely overwhelms any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer."  Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

**2. Impermissible Pre-Offer Medical Inquiry**

Plaintiff also brings a claim under the ADA premised on an allegedly improper medical inquiry prior to a conditional offer of employment.  Under the ADA, subject to certain exceptions, at the pre-employment stage "a covered entity shall not conduct a

22

medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A) (1994). However, "[a] covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B) (1994). Whether an applicant who does not have a covered disability may pursue a cause of action under these provisions is unclear. Cf. Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999) (leaving unresolved whether an individual without a disability may make a claim under similar provisions of the ADA governing employees). Even assuming that plaintiff could maintain such a claim, he could not prevail.

The EEOC has promulgated enforcement guidelines for pre-employment medical inquiries and examinations, which are helpful in discerning the intended extent of the ban on disability-related questioning of job applicants before a conditional offer of employment is made. See EEOC Notice No. 915.002 (Oct. 10, 1995). Prohibited or disability-related questions are those that are "likely to elicit information about a disability." Id. Although disability-related questions are not allowed, the EEOC's guidelines provide explicitly that the prospective employer may

23

inquire into the applicant's work history.  See id.  Furthermore,
"if there are many possible answers to a question and only some
of those answers would contain disability-related information,
then that question" is permissible.  Id.  Examples of such
permissible inquires include questions about the applicant's
ability to meet attendance policies, his attainment of any job-
related certifications or licenses, and the existence of any
prior criminal arrests and convictions.  See id.

Applying the EEOC's guidelines to the present case, the
defendant's questioning regarding the one-year gap in the
plaintiff's work history was an acceptable inquiry.  The inquiry
was of the sort that has many possible answers only one of which
is disability-related.  For example, a one-year gap in employment
could be explained by the applicant's attending school, being
incarcerated, taking an early retirement, training for new
employment, waiting for a position to start, being unemployed but
unsuccessfully searching for a new job, being unemployed but not
searching for substitute employment, or taking an extended
vacation.  Plaintiff seems to believe that because one possible
response was medically related and that was the response he gave,
then the question was per se impermissible.  The absurdity of
such an interpretation is obvious.  Were that the rule, then

24

virtually any applicant could seek to manufacture an ADA claim by providing medical information when asked a question susceptible to many non-disability related responses. Because the inquiry into plaintiff's one-year gap in employment by MBUSI's agent was a legitimate, job-related inquiry with many possible replies unrelated to disability, it was permissible and plaintiff's claim must fail. See id.

In summary, the Court finds that, although no material issues of fact remain, plaintiff Gregory H. Hardin is not entitled to judgment as a matter of law on the issue of defendant's liability under the ADA. However, the Court does find that defendant MBUSI is entitled to judgment as a matter of law as to all claims asserted by plaintiff. Therefore, the plaintiff's motion for summary judgment is due to be denied, but the defendant's motion for summary judgment is due to be granted. A separate order will be entered.

DONE this _13th_ day of JULY, 2000.

SENIOR UNITED STATES DISTRICT JUDGE